**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

H. T. F.

_____

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2019 OCT -2  P 3: 59

_____

_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

- against -

Rutgers, the State University 7).
School of Social Work -MSW profm
Arlene Hunter, Cathryn Potter
Mark LaMar, MaryBeth Ali
Juinaj Thomas, Laura Cuevas
Marie Flo Cake DSW, LCSW and
Robert L Barchi

**COMPLAINT**

Jury Trial: ☑ Yes ☐ No

(check one)

_____

_____

_____

*(In the space above enter the full name(s) of the defendant(s). If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The names
listed in the above caption must be identical to those contained in
Part I. Addresses should not be included here.)*

## I.    Parties in this complaint:

A.    List your name, address and telephone number. Do the same for any additional   plaintiffs named. Attach
additional sheets of paper as necessary.

Plaintiff        Name            H. F

                 Street Address  1520 Morris Place   Unin

                 County, City    Hillside, nj 07205

                 State & Zip Code

                 Telephone Number  312-488-9436

B.   List all defendants. You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual. Include the address where each defendant can be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1

Name _Rutgers University the State University_

Suites 413-423    Street Address _360 Dr. MLK Blvd Hill Hall_ _also_

County, City _Newark NJ 07102_

State & Zip Code _Dr. Colbam St. Tower Ave, suite 200_ _NJ. 08729_

Defendant No. 2

Name _Arlene Hunter_

Street Address _360 Dr. MLK Blvd Hill Hall Suit 413-4_

County, City _Newark NJ_ _Essex County_

State & Zip Code _NJ 07102_

Defendant No. 3

Name _Cutuwym Potter_

Street Address _360 Dr. MLK Blvd Hill Hall Suite 413-42_

County, City _Essex, Newark_

State & Zip Code _NJ 07102_

Defendant No. 4

Name _Robert L. Barchi President Rutg_

Street Address _L College Ave Stef, Winants Hall_

County, City _Middlesex, New Brunswick_

State & Zip Code _NJ. 08901_

## II.   Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. There are four types of cases that can be heard in federal court: 1) Federal Question - Under 28 U.S.C. § 1331, a case   involving the United States Constitution or federal laws or treaties is a federal question case; 2) Diversity of Citizenship - Under 28 U.S.C.  §   1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case; 3) U.S. Government Plaintiff; and 4) U.S. Government Defendant.

A.   What is the basis for federal court jurisdiction? *(check all that apply)*

☐ Federal Questions          ☐ Diversity of Citizenship

☐ U.S. Government Plaintiff          ☐ U.S. Government Defendant

B.   If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? _Violation of ADA policy 42 USC § 1983_
_29 USC § 794 §U. Sect 504 of Rehabitation Act_
_of 1973, 1998 Amendment of 2008_

- 2 -

C.   If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship _____

Defendant(s) state(s) of citizenship _____

## III.   Statement of Claim:

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.   Where did the events giving rise to your claim(s) occur? Rutgers, Newark Campus Rutgers UHNJ / UHMDNJ - Newark NJ

B.   What date and approximate time did the events giving rise to your claim(s) occur? 10/5/2017, 10/6/2017 1'/1/2017, 9/2018, 12/2018, 2, 6/2019

**What happened to you?**

C.   Facts: Rutgers failed to adhere to ADA policies. Rutgers failed to Adhere to it our written Manuals, Course Materials, Syllabus, Course Catalog, Rutgers wrongfully terminate HT's education after collecting $407,900 in student loans & tuition monies from New Jersey

**Who did what?**

Arlene Hunter, Carolynn Potter, Marc Lamar Mary Beth Cleary, Henry Thomas, Laura Einer Meyer, McCabe, Robert L. Barchi, Deborah Dutta, Christopher Molloy and their agents.

**Was anyone else involved?**

Ryan Chesterfield, Joan Dawkins, Marie McCabe Desiree Whatley, Charles Chern, Jeanne Zoller, Lunise Carcica, Ricki Palenzar, Deborah Gregory, Smith, Sarlata, Ron Ruiz Karina Smith Elliss Sec. of Education, OAG Cabu Gabriel

**Who else saw what happened?**

My Class Mates or the internship, worker at the internship, Supervisor, USW, Liaison at internship, UHNJ Staff

-3-

## IV.     Injuries:

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received. _Loss of time, income, in debtness of order 107,000. Defamation c Slander, loss of income from MSW; Mental physical distress and damage, eye strain, decline in vision, future repayment courses, Tools Repaid to complete assignments cergy out and solemun ad loss_

## V.     Relief:

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation. _Grenter MSW degaree, reinstatement into the MSW program, reinstatement of grades, reinstatement of grades, Sur pressed, help with PRSW-SW incomre exam, return of Student loan to Federal government in the amount 107,000 - minus 1500, damages due to loss of time & income. Deinative of amages as detailed in the alfideke freed 3.5 million dollars over all_

**I declare under penalty of perjury that the foregoing is true and correct.**

Signed this ___ day of _October_ , 20 19 .

Signature of Plaintiff _____

Mailing Address _1520 - Moures Place_
_Hellside NJ 07201_

Telephone Number 312 - 488 - 9436

Fax Number *(if you have one)* _____

E-mail Address hfpruse plaintiff 3690 gmail.com

Note: All plaintiffs named in the caption of the complaint must date and sign the complaint.

Signature of Plaintiff: _____

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2019 OCT -2  P 4: 00

-----------------------------------------------------------------------X

HTF
Plaintiff,
Civ. No.:
- against - COMPLAINT AND
JURY DEMAND
RUTGERS, THE STATE UNIVERSITY OF NEW
JERSEY; School of Social Work MSW Program  Arlene Hunter; Cathryn C. Potter; Mark
W. Lamar; MaryBeth Ali; Trinay Thomas; Laura Curran and ROBERT L. BARCHI,
Defendants.

-----------------------------------------------------------------------X

Plaintiff HTF ("Plaintiff" or "HTF"), ., complaining of
RUTGERS, THE STATE UNIVERSITY OF NEW
JERSEY; School of Social Work MSW Program  Arlene Hunter; Cathryn C. Potter; Mark
W. Lamar; MaryBeth Ali; Trinay Thomas; Laura Curran, Marie McCabe, DSW,
LCSW,,and ROBERT L. BARCHI, Chancellor  Debasish (Deba) Dutta., Christopher J.
Molloy
Defendants. (referred to collectively as "Defendants," except where separately
identified) alleges as follows:

PRELIMINARY STATEMENT

1. This case centers on violations of ADA policy and Rutgers failure to adhere to written
policy and manuals/handbooks as is its history referred to as the RU SCREW. Policies
was either ignored when it came to HTF or arbitrarily applied when it was a disad-
vantage to the plaintiff.

2. HTF was a NJ Tuition waver student from the Work First Program  (DFAB), the City
of Newark's 2020 program a highly promising Student , a three time graduate of Rut-
gers University , and a displaced biotech worker that was sent to receive training in an
in demand industry. NJ Department of Labor & Workforce Development One-Stop Ca-
reer Center provides HTF with proper waivers and guidance to find suitable employ-
ment. HTF choose Social Work because of the extreme need in the city of Newark NJ.
HTF was not only denied reasonable ADA accommodations directly by arlene hunter
and mark lamar, Plaintiff was chronically and heinously undermined by arlene hunter
program dean who's FAILURE TO FOLLOW WRITTEN SCHOOL POLICY (exhibit A)
AND SYLLABUS (Exhibit B) caused HTF substantial financial damage, but extreme
emotional distress and depression.physical and psychological damage to plaintiff.

3. Meanwhile, Defendants, either directly or through their agents, breached their
duties to HTF by allowing this pervasive abuse to occur, continue and proliferate.

4. Such abusive conduct, and Defendants' knowingly and/or recklessly allowing it to
continue, is reprehensible enough on its own.

5. However, Rutgers was also on notice that HTF had been diagnosed with
documented mental/physical  disabilities and related issues, and Rutgers had explicitly
agreed to make special accommodations to address HTF needs.

6. Not only did Rutgers fail to provide reasonable accommodations, but knowing of HTF disabilities and related issues, and exhibiting deliberate indifference to the impact of Hunters's behavior, Defendants allowed HTF to be subjected to the outrageous and egregious abuse of power perpetrated by Dean Hunter and her staff at her direction.

7. This abuse was documented through hundreds of emails, false statements made by hunter and staff in said emails to HTF, and the history of maligning student and playing favorites with non- minority students which is well documented in the press .

8. It was not until HTF was very ill during fall 2018 and the need for accommodations HTF had asked for continuously since 2017 became an issue and the University was compelled to somewhat address the outrageous, concealed abuse that was being committed by Hunter and staff against HTF and others.

9. On or about October 23 , 2018, Rutgers University President Robert Barchi , Cathyrn Potter admitted the university wrongfully dismissing a Graduate School of Social Work student that complained of sexual harassment by misapplying policy and falsification and awarded Joyce Leuchten her degree 36 years late. This same type of railroading students is what HTF faced chronically and pervasively as a Tuition waiver student and older minority student with disabilities: "It took 36 years but Joyce Leuchten now has her degree. "The diploma may not eradicate the pain, or bring closure, or make up for the lost career she so desperately wanted. It doesn't change the past, nor is it institutional penance for Rutgers University. The current dean of the Rutgers' School of Social Work acknowledged all that when she hand-delivered Leuchten's degree to her Mountain Lakes home Thursday afternoon) 10/22/2018" While Leuchten was not a minority student she was an older mother and wife and she was ignored by the Administration and wrongfully dismissed as the school concocted a grade dispute to put her out. The grade issue manufactured against HTF is done in the same fashion and spirt as MrsI Leuchten in an attempt to skirt legal policy issues and give a false impression to the court as very few procedural safeguards are required in academic dismissals because courts do not feel comfortable second-guessing academic judgments. This is not about the grade as HTF has an A in the course took ill and failed the course not due to grades but because of three missed classes the second time around. If HTF was allowed access to the online course as an accommodation there would have been no missed classes. However, forcing HTF to repeat the course was a violation of policy and suppressing HTF's grade and forced withdrawal from six paid courses constitutes grade tampering and waisting of the students time. If the first 511 grade was not suppressed and the new internship allowed Rutgers could have avoided violation the rights of HTF.

10. Rutgers has a long standing history of ADA violations, discrimination, abuse, and retaliation against whistle blowers.In 2012-2013 Rutgers allowed the abuse of a handicapped student athlete Derrick Randal at the hand of Rutgers faculty and staff and only took responsibility when video footage of the abuse was made public. On or about April 3, 2013, Coach Rice publicly stated: "I apologize to any student-athletes on the team who may have been personally harmed. The kind of chronic and pervasively abusive behavior demonstrated on that video is unacceptable . . . I was deeply disturbed by the behavior that the video revealed which was much more abusive and pervasive than I had understood it to be."

"[There] was no explanation for what's on those films because

there's no excuse for it, I was wrong. I want to tell everybody
who's believed in me that I'm deeply sorry for the pain and
hardship I've caused.". "On or about April 4, 2013, Assistant Coach James Martelli publicly stated: I am sickened that as an assistant coach, I contributed in any way
to an unacceptable culture."

13.HTF is technically a waiver student, however, Rutgers over charged htf at an out of state student and took Fedloans as payment for tuition. Therefore, HTF was actually a full paid student and was denied access to online courses as an arbitrary rule was imposed to discriminate against the student. In 2016 HTF requested to take online classes and was told by Arlene Hunter that was not possible for a Tuition waiver student, however, the school took loan money making htf a regular student and not a waiver student. There is no written policy stating that waiver student can not take online classes. Moreover, as a handicapped student the online courses should have been the reasonable accommodation to higher education accessible as per the ADA Compliance and Section 504 of the Rehabilitation Act of 1973 which Rutgers University and the School of Social Work MSW program failed to follow.. However, Arlene Hunter refused to allow HTF access to online course as other students had. It was As HTF has been and always was a NJ resident this over charge constitutes fraud.

14.HTF requested reasonable accommodations of online courses due to progressive illness that was exacerbated starting in September 2017 after being forced into a faux internship at UHNJ where HTF was subjected to racism and discrimination by Joan Dauhajre Chief Patient Experience Officer and other actors under her control as she took complete control over the substandard inadequate alleged internship what was free labor with no educational component as required by both Rutgers SSW- MSW manual and supporting syllabus for FIELD EDUCATION PRACTICUM III(19:910:600) (exhibit C).

15. The discrimination during the internship is tangential to the ADA claim as it is the fulcrum of the ADA violations and the reason that Hunter forced HTF to wrongly repeat the 19:910:511 (Clinical Social Work) course even though it was completed and a permanent grade of A given and placed on the permanent transcript.

16..On or about 10/6/2017 ( it is possible it was sometime on 10/5/17)Joan Dauhajre after meeting HTF for less than 15 minutes went into hysterics when HTF gave her a copy of a flyer for an event for the homeless in Newark as part of the required policy practice element of the FIELD EDUCATION PRACTICUM III(19:910:600). Discrimination against HTF and the Newark NJ community Dauhajre called the SSW MSW program and demanded HTF be terminated "stating she is too involved in the community". This community involvement was an issue as the internship was a fake, not attached to the social work department, and HTF was given a nurse intern badge and give the same exact assignment as the high school students- a clear violation at a graduate level course.

17. The FIELD EDUCATION PRACTICUM III(19:910:600) did not adhere or follow the syllabus for the course. This UHNJ placement also violated all of the requirements as prescribed in the supporting field manual as it was not clinical as required and was simply a device to trick HTF and other students into proving free labor in violation of the educational contract with both institutions. The placement also was required to provided

ADA accommodation and none where made for HTF. All the numerous request to be removed from the UHNJ free labor non clinical non internship- where ignored.

18. Dauhajre went on to defame and slander HTF to the SSW administration which did not follow the required plan of action in such matters. Discrimination against HTF as a minority waiver student the Manual was not followed and Arlene Hunter, Mark Larmar, Trinay Thomas conspired against HTF and had Mary Beth Ali calling around to speak with HTF to terminate the entire years internship 2017-2018 rather than provide a new internship as per the field manual and student handbook. Causing not only financial damage as the termination meant another year of school at the expense of HTF, but also forced withdrawals from required courses 600, 511 and 512 resulting in HTF not being able to graduate on time 5/2018 and a waste of books. With no source of income this caused an undue hardship and constitutes a breach of fiduciary duty on the part of Rutgers, Dauhajre defamation and slander is documented in a letter from Potter dated 2/6/2019 where she arbitrarily expelled HTF under false pretense and in retaliation for complaining repeatedly about the UHNJ internship, seeking reasonable accommodations and the discrimination.

19. On or about October 17, 2017, Plaintiff  met with  SSW Staff Thomas, Ali and Hunter in a meeting to allegedly discuss the UHNJ internship they fail to listen and tried to find anything to justify not following the requirements of the manual and syllabus. However, the email dated 10/6/2017 clearly documents the violation of  both field manual and handbook, as well as the syllabus. SSW failed to follow its own policy and sacrificed HTF's education to appease Dauhajre who never worked with or engaged HTF before for after the 15 minute meeting of 10/5/2017.Without documentation, due process, or speaking with staff assigned to supervise and aid HTF Ali sent an Email proving  that the necessary and required policy was not adhered , and the proper steps to address the needed change in internship was not done  when the SSW sent HTF to UHNJ and when Dauhajre defamed and slandered HTF demanding she  be removed.A PIP was rerquired and not done by SSW Staff, no supervisory staff was involved in the process as required- robbing HTF of due process and right to academic freedoms.

18. HTF had suffered, and continues to suffer, from the abuse/ neglect to which she was

subjected,HTF was not provided a new internship as required. HTF secured a new clinical internship with another hospital system Robert Wood Johnson Barnabas with in 2 weeks of leaving UHNJ. This was the placement HTF had originally requested and was told a lie by Rutgers SSW staff that it was not available and RWJBarnabas had stated they did not want interns. The complete opposite was the case as the coordinator for internship stated they had contacted Rutgers SSW with no replay - seeking interns. HTF wrote to the administration about the new placement and her emails were ignored. HTF escalated contact with the Rutgers hierarchy to rectify this lack of due process and institutional discrimination, but all at Rutger turned a def ear. Barachi and his various underlings where contacted from 10/2017 up until 2/6/2019

**Joan Dauhajre  — made a series of false salacious and slanderous allegations against HTF, either knowing they were false or with a reckless disregard for the truth of those statements  and in violation of Rutgers Code of Ethics of its employees. The derogatory comments about HTF were made solely to damage her reputation, in keeping**

**with UNNJ/UMDNJ's attempt to marginalize the resident population of Newark NJ and the homeless, jeopardize HTF's ongoing educational process, and negatively impact her grades. HTF was sickened by the unprovoked and unfounded assassination of her character and work reputation perpetrated Joan Dauhajre and her co-conspirators**

JURISDICTION AND VENUE

19. This is a civil action based upon Defendants' violations of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. ("Rehabilitation Act"); Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, et seq. ("ADA"); 42 U.S.C. § 1983, et seq.; the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et seq.; and other common law causes of action.

20. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1332 and under 28 U.S.C. § 1343; Plaintiff's claims arise under 42 U.S.C. § 1983, the Rehabilitation Act and the ADA. The supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367 is invoked over state and local law causes of action.

21. The amount in controversy is to be determined at trial but is claimed to exceed the jurisdictional amount of $75,000.

22. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 (b) and (c) because a substantial part of the events or omissions giving rise to the claims occurred in the District of

New Jersey, and Defendants are subject to personal jurisdiction in this District.

23. On or about April 4, 2019, Plaintiff, provided Rutgers with statutory notice as may be required pursuant to the New Jersey Tort Claims Act (N.J.S.A. § 59:1-1, et seq.).

24. On or about April 25, 2019, Plaintiff, provided further notice of the claims asserted herein by completing and submitting a supplemental form as provided by Rutgers- Notice of Claim., and the state of New Jersey

PARTIES

25. HTF is a resident of the State of New Jersey.

26. Defendant Rutgers, The State University of New Jersey ("Rutgers" or "University"), is a public university authorized under the laws of the State of New Jersey and operates under the supervision of the State Board and/or the Commissioner of Education of the State of New Jersey.

27. Defendant Mary Beth Ali Instructor & Field Education Coordinator, Newark Campus , Masters of Social Work, was an agent, servant, and/or employee of Rutgers. on 10/5/2017and 2/6/2019.

28. Defendant Charles Chear Assistant Director of Student Affairs, Instructor, Campus Coordinator, and was an agent, servant, and/or employee of Rutgers.
Pernetti was HTF anemic advisor.

29. Defendant Laura Curran Associate Professor and Associate Dean for Academic Affairs and was/ is an agent, servant, and/or employee of Rutgers.

30. Defendant Arlene Hunter
Associate Dean for Students Affairs, Arlene Hunter directs and guides the Office of Student Affairs and is an agent, servant, and/or employee of Rutgers.

31. Defendant Mark W. Lamar Associate Professor of Professional Practice Executive Director, Office of Field Education. He is an agent, servant, and/or employee of Rutgers.
32. Defendant Robert L. Barchi ("President Barchi") is the current President of Rutgers. He has served as President since September 1, 2012, and is an agent, servant, and/or employee of Rutgers.
33. Defendant Cathryn C. Potter Dean, and is an agent, servant, and/or employee of Rutgers.
34, Defendant Marie McCabe, DSW, LCSW, and is an agent, servant, and/or employee of Rutgers.

FACTUAL BACKGROUND
RUTGERS Accepts HTF– A STUDENT WITH DIAGNOSED
DISABILITIES as
33. HTF was a student on the Rutgers Newark Campus from the fall of 2015 through the spring of 2019.

34. Prior to HTF coming to Rutgers, HTF was a summa cum laude MAS, magna cum laude MPA graduate of Fairleigh Dickson University.
35. In high school, HTF was a Honors Student..
36. Notably, HTF has over 40 years of work experience in government, education, biotech-pharma.HTF was a biotech worker for over 20 years before becoming ill.
37. HTF was diagnosed with a genetic disabilities at age 29.In 2009 HTF was gravely ill and suffered complications during surgery that resulted in memory loss worsened the genetic disability. Her diagnosis has resulted in the need for special accommodations being made to address HTF disabilities which have worsen over the years. As a result of her disabilities, HTF experienced the lack of concentration, and retention, and tendency to follow directions of Rutgers faculty blindly.
38. HTF informed Rutgers, the University and the SSW -MSW program was made aware of HTF's disabilities and related issues and specifically agreed to make special accommodations to address HTF needs. A accommodations letter was supplied to HTF for use at the school.
39. HTF provided Rutgers with HTF Individualized Assessment from her medical specialist which describes the special education and related services specifically designed to meet HTF unique requirements.
40. HTF met with Hunter and Lamar again in the fall 2017 in mid December and informed both Hunter and Larmar that HTF did not agree with the 10/6/2017 email terminating her internship for the year and that she was too ill to have school be extended any longer. The letter dated on or about 10/6/17 (exhibit C) violates the Universities own policy about conflict on the internship site. Moreover, there are no documents from the Rutgers mandated MSW supervisor or the over arching MSW Liaison- which is mandatory . These Rutgers employees where to have held a meeting to address the made up issues stated by Joan Dauhajre. The Liaison never showed to the site which is a major violation, and they never documented any issues during the internship because there was nothing to document . The MSW supervisors request for a new assignment for HTF was ignored by Hunter and the SSW MSW staff. Dauhjre interference with HF education is another Rutgers Ethic violation that the school ignored. None of the Rutgers personnel that supervised the UHNJ/UMDNJ internship site ever met Daujhjre. Moreover, HTF never met or worked with or

for Daujhjre and only saw her for 15 minutes on 10/5/19 and had no prior exposure to that UHNJ employee. OnWithout due process HTF was thrown out of the internship they paid for and without find a suitable replacement as required in the manual ( exhibitThat the course was completed as required and HTF followed the course catalog and manual and the grade must stand. Moreover, if forced to repeat courses they needed to be online because of her medical needs and that Rutgers had in the past provide HTF with the resources she needed, including online course and psychologist that look out for HTF psyche. Hunter more so than Lamar refused to allow HTF to take online courses which is allowed at their digression, stating that tuition waiver students can not take online courses. All of Rutgers courses have an online complement and work is submitted online -therefore an online presence is already part of all courses at Rutgers-MSW. Denying HTF access fo online courses was therefore arbitrary and capricious and smacks of racism and discrimination.

41. HTF enthusiastically had enrolled at Rutgers as a highly promising student with an already recognized history a successful college careers and a lengthy established professional career thereafter, but also as a student-with special educational and related needs that Rutgers had agreed to make special accommodations to address.

## A CASE OF ABUSE

42. Defendants, directly and/or through their agents, willfully, recklessly, negligently and with deliberate indifference, placed HTF in a hostile environment UHNJ in which she was regularly and continuously subjected to physical, mental, and emotional abuse of the most outrageous nature by strangers using the internship guise to secure free labor. Moreover, defendants fraudulently stated that HTF's internship choice did not want her and stored HTF purposefully to UHNJ internship which was substandard, did not follow the requirement of the syllabus, field manually and not suited for a higher education clinical pdacmentment

43. Such chronic, abusive and damaging conduct occurred after HTF joined the Rutgers SSW conceived internship 9/2017 , and continued throughout until HTF was slandered and defamed and a career damaging email was sent around the university with spouting career damaging falsehoods, slanderous and defamatory statements about HTF work abilities with a slant that attempted to make it appear as a grade issue rather than discrimination, possible grade tampering and collusion. .

44. The culmination of this abuse was marked by the public release of a dismissal letter containing lies and misdirection dated February 6, 2019 by Dean Potter to HTF and others outlining grossly demeaning statements about HTF's inability to do grade school grunt work and menial labor and how she was failed for getting ill and missing classes that she was forced to repeat about already receiving an A grade for on her permanent transcript and the grade suppressed and failing a second time due to the face HTF was denied access to online courses which would have eliminated missing classes altogether while addressing her need for online course to facilitate the ADA accommodations needed. The letter shows Dean's Potter and Hunter ignoring, the ADA student what was needed most since late 2015 to the present. There was also abusive racially discriminatory language used against HTF during several meeting with Hunter where she was referred to as girl.

46. According to various classmate witnesses, fellow interns HTF's treatment

from Rutgers Staffers from 2016 to 2018 ("list of witnesses"), "Got worse after the 10/5/2017 UHNJ meeting with students about how bad the UHNJ internship was."

47. The Rutgers administration, including Potter, Hunter, Larmar , Thomas , and Ali knew of this abusive conduct, yet they conspired to ignore written policy solutions and terminate HTF's internship in violation of the schools written policy without speaking to the adult student HTF for the entire year over an unethical lie with violates Rutgers University policies. The University SSW/MSW staff stood by and allowed the abuse, and educational/career damage it to continue as HTF regularly and continuously suffered more and more damage to her health, self-esteem, well-being and career prospects.. This same rutgers staff ignored her numerous email complaints that clearly outlined the violations, but choose to ignored the legal facts.

48. These individual Defendants ignored reports and complaints and deliberately concealed evidence of the UHNJ pervasive and continuous abusive and substandard non-educational conduct from the graduate students corralled into UHNJ internships-which was the catalyst for Rutgers SSW/ MSW to force the sick HTF to into repeating the grueling night courses- that required the older student to be in the streets of Newark NJ alone at night with a serious illness rather than online courses or accepting the grade that was already granted and paid for.This blatant disregard of their obligations and responsibilities to HTF, was undoubtedly to protect Rutgers' multi-million dollar internship program (which provided free labor to organizations it seeks to partner with) and its impending desire to have a potential lucrative relationship UHNJ that could general millions of dollars in tuition revenue that such an internship opportunity presented- over the educational needs of the graduate student.

49. The outrageous, intimidating and abusive conduct to which HTF was subjected is documented in an email dated on or about 10/6/2017 which clearly documents the Universities failure to follow required procedure to protect HTF from the abusive, uneducational internship that was not up to the syllabus or the standards written as school policy. It shows that the school and the internship had no means of contacting HTF as she was forced to wonder around the internship seeking out assignments. The email from MaryBeth Ali further demonstrated that the simple mandatory requirements of the internship where not being met as HTF had no required office area to work, a place to sit and do work, and was constantly made to circulate through the hospital causing damage to a preexisting condition and causing emotional harm as the older student was weary and exhausted by the meaningless labor best suited to younger and stronger grammar and high school children.

50. Dean Hunter verbally, mentally, and emotionally abused HTF through derogatory and discriminatory name calling.Hunter referred to HTF a Women nearly her own age in the workplace/eduational space and often confronted HTF with sexist language. For black women, gender and racial discrimination can collide in a single experience—like being called "girl." During slavery and into the Jim Crow era black adult men were referred to as "boy" and women as "girl"—a constant reminder that black people were deemed infantile and not deserving of respect or proper titles even well into adulthood. Hunter hold a PhD in social work was very well aware of what she was doing and was corrected on a number of occasions that HTF had not been a girl in over 40 years and that such language was demeaning.

51.Hunters refusal to adhere to written proper procedure - which was followed in 2016 just a few months prior under the direction of a staff member who has sine quit the university shows that when staff members are insistent that policy is follow it is done only then. In 2017-2018 a breach for policy was allowed through collusion in order to curry favor with  Joan Dauhajre and her nepotism with the now disgraced former CEO of the hospital  (monitors report exhibit D) in order to have UHNJ as a internship placement to dump graduate student their to collect high course fees for field 600 which was often not in keeping with the syllabus, course catalogues and manuals as required by accreditation and higher education. See exhibit

52. Such continuous and admittedly abusive conduct, and Defendants' knowingly and/or recklessly allowing it to continue, is reprehensible enough on its own. However, when

combined with the fact that Rutgers was apprised of HTF disabilities and related issues and

agreed to make special modifications to accommodate his needs, leaving HTF to somehow

fend for herself against the person with complete authority and control over her and her waiver and education/federal student loan SSW Graduate Deans Hunter and Potter-- truly is conduct of the most egregious and damaging nature.

53. Defendants acted with deliberate indifference in circumstances in which they could and should have exercised substantial and reasonable control over both Deans Hunter, Potter and and the

environment in which Joan Dauhajre committed her abuse- defamation and slander against HTF.

54. As a result of Joan Dauhajre, and Dean Hunters's abuse and the hostile and violent environment these  women created, HTF suffered physically, mentally and emotionally.

55. The continuous abuse left HTFin a constant and debilitating state of anxiety and fear. HTF felt completely helpless under the authority of Hunter and her co-conspirators and the horrible internship at UHNJ/UMDNJ. HTF lost all confidence and, not surprisingly, did not and could not know how to deal with Dean Hunters's abuse. As a

result, HTF suffered more and  more  physical  symptoms and mental issues .

56. HTF  tried to just go through the motions, believing that she had no choice but to be obedient and to tolerate and endure the abuse of Dean along with the demeaning substandard internship. The very same internship that middle school and high school students were doing and conducting the same assignment that HTF was being forced to do.

57. Incredibly, in a system in which assistant deans were assigned to each of the MSW student to serve as "guides" for the purpose of assisting the students-in coping with academic and or personal matters, HTF special learning and related needs were entrusted to Charles Chear assistant Dean. Charles Chear had to refer to Dean Hunter for guidance  and answers to issues with the internship and related matters. Hunter provided substance or misleading information to chear giving HTF the wrong information for the appeal process that resulted as of being forced out of the substandard UHNJ internship and the subsequent A grades suppressed and or removed from HTF perma-

nent transcript Arlene Hunter's Falsifying or Tampering with Records (N.J.S.A. 2C:21-4)- created a false grade so as to force HTF out of school illegally and breaching Charles Chear and the University Fiduciary duty to HTF.

58. What is more, Dean Hunter frequently engaged in mind games with HTF, such as ignoring HTF request for transferring in of grades from similar Rutgers and FDU courses without any explanation. It took nearly two years and repeated emails to force Hunter to accept the paper work for the grades even though the program has a policy to accept up to 18 credits from other institutions.

59. On several occasions, Hunter stared directly at HTF with an unmistakable look of hatred or failed to acknowledge HTF's presence.

60. With respect to Dean Hunters's abuse,  and the substandard internship at UHNJ/UMDNJ the assistant Deans and staff members  told HTF and the other MSW students  to deal with it (witnesses will be presented and witness statements).

61. Trinay Thomas  not only stood by while Dean Hunter abused HTF and certain other students , but Trinay Thomas herself participated in, and contributed to, such abusive behavior. Making up issues of trouble when there was none and ignoring complaints about real issues and problem when presented to her.

62. Eventually, HTF lost all confidence in the MSW STaff and in HTFs cognitive abilities, which impacted HTF ability to perform and study at HTF prior high levels.

63. As a result of such abuse, and grade tampering HTF was compelled to leave Rutgers with out being granted the MSW that HTF has more then enough credits for and is now in debt 107,000 dollars for nothing..

64. Meanwhile, HTF is left to live with the damage caused
by four traumatic years fending for themselves against Dean Hunters abuse, and the needless taking of Fedloans has to be addressed by the court.

65. HTF has incurred substantial damages as a result of the continuous physical, mental, verbal and emotional injuries suffered, as well as lost economic opportunities and earning potential from a MSW and subsequent license. In addition, HTF is entitled to punitive damages and attorneys' fees.

66. Aggression and abuse proliferate where they are tolerated, and the Defendants admittedly tolerated Hunter and Joan Dauhajres aggression and abuse to the severe detriment of HTF.

THE Monitors report  AND THE AFTERMATH

67. Judy Persichilli, appointed by the state to monitor the hospital wrote 37-page report was blunt, concluding University has been neglected after suffering a leadership void since the state dissolved its parent agency, the University of Medicine and Dentistry of New Jersey, five years ago. John Kastanis was removed as CEO he brought Joan Dauhajres to UNNJ and she used the internship as free labor to bolster the failing hospital. The deaths and the F rating, public battle with the city of Newark, and other negative received by UHNJ/ UMDNJ happened while HTF was forced into the internship there.

68. UHNJ/UMDNJ the hospital flunked a safety report card, saw its bond rating downgraded and alienated union and community leaders by trying to transfer some pediatric

services to a competitor to save money. This constituted and unstable, hostile internship environment and the Rutgers SSW MSW program staff was obligated to HTF and the other graduate student languishing at UHNJ to place them in new internship ( see manual) without any penalty .

69. Upon  the information Hunter and the other co-conspirators ignored this information, because they wanted to use the hospital as a location to dump more graduate students to do grunt work and make the failing hospital appear to have a full range of staff and support workers when it did not

70. The  report's  identified a range of problems at University Hospital, including a lack of strong and visionary leadership, no strategic plan, poor internal accountability and communication, and limited board oversight. Hospital president and CEO John Kastanis announced he would step down and did as a result of the report.

71. Upon information and belief, on or about  10/5/20172, HTF announced Kantanis' employee Joan Dauhajres that he brought with him from two other hospitals he had left that a required policy project would be with the homeless population in the area. Joan Dauhajres reaction was insanity and told HTF not here- which UHNJ is obligated to help the homeless or anyone coming into the ER. Joan Dauhajres then contrived false defaming and slanderous comments about HTF and Dean Arelen Hunter suborned this lie and had Mary Beth Ali write a letter  (exhibit  ) that shows the wrongful termination of over two years of internship required by the program needless and with malice..

72.This was reported to the office of the president Barchi and the schools chancellor in 2017, 2018, and 2019.these men did not take the matter to the full Board of Governors, nor did he take any other action.

73. The actions on 10/5/2017 has a ripple effect and Hunters abuse and grade tampering forced HTF to repeat a course that HTF had already passed and received an A grade for and while attending the class at night HTF was ill and under doctors care missed a class and the professor Marie McCabe was told to fail HTF. HTF was denied access to needed online courses by Arlene Hunter and Marc Lamar illegally (ADA) and in violation of Rutgers University policy and  in spite of HTF doing all the required course work successfully. HTF was made ill by the grueling UHNJ internship grunt work and the abuse faced at the hand of Hunter and her co-conspirators.
***
***

74. Despite the clear evidence of misconduct, fraud, and the unsuitable substandard internship on or about October  17, 2017, Dean Hunter and her co-conspirators Potter and Larmar refused to allowed to HTF resume a new internship secured at a hospital with a Passing grade and no scandal.

75. The Defendants did not make any real effort to help HTF  who had been subjected to Hunters' abuse, and Joan Dauhajres slave labor/grunt work uneducational internship and deliberate indifference to the hostile
and abusive environment to which University students, including HTF, were being subjected - with a new internship which HTF arranged and had ask to be sent to in 2016 and 2017.

RULES AND CODES OF ETHICS:
THE RUTGERS OFFICE OF COMPLIANCE,

60.5.8C. Faculty members must not use or attempt to use their University positions to secure inappropriate privileges or advantages for themselves or others.
***

The internship was a violation of the 60.5.8C policy and number of other policies which will be included under separate exhibits.
***

FIRST CAUSE OF ACTION
NEGLIGENCE
AGAINST ALL DEFENDANTS

76. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 77 as if fully set forth herein.

78. Defendants, directly and/or through their agents, owed a duty of care to Plaintiff.

79. Defendants, directly and/or through their agents, breached their duty of care.

80. Defendants, directly and/or through their agents, failed to exercise a degree of care for the safety of Plaintiff, which a prudent person would exercise under the circum-stances.

81. Defendants' negligent and/or palpably unreasonable conduct proximately caused Plaintiff harm.

82. Defendants, directly and/or through their agents, should have foreseen, under the attending circumstances, that the natural and probable consequences of their acts and/or

omissions would have caused serious injury to Plaintiff.

83. Plaintiff's injuries and damages are permanent and substantial.

84. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other

relief as the Court deems just and proper.


SECOND CAUSE OF ACTION
NEGLIGENT FOLLOW WRITTEN POLICY, PLACEMENT OF GRADUATE STU-DENTS, HIRING, TRAINING, SUPERVISION AND RETENTION
AGAINST RUTGERS, HUNTER, POTTER, BARCHI, MALLOY,
AND DUTTA

85. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 86 as if fully set forth herein.

87. Defendants Rutgers, MALLOY, Barchi, Hunter, Potter and Dutta (the "Supervising Defendants") directly and/or through their agents, were negligent and/or acted in a pal-pably unreasonable manner in hiring, retaining, training and supervising Thomas, Ali and .Chear and other staff members of the SSW MSW program and its required intern-ship

88. Dauhajre, Hunter, Ali conduct was committed during the course of, and within the scope of, their employment at Rutgers.

89. Supervising Defendants, directly and/or through their agents, had a duty to use reasonable care in selecting competent and fit employees for the work assigned to them.

90. Supervising Defendants, directly and/or through their agents, were also bound to

refrain from retaining the services of unfit employees.

91. Supervising Defendants were provided with notice of Dauhajres and Hunters outrageous conduct and their propensity for such outrageous conduct on numerous occasions, but failed to adequately address such behavior, further causing harm to Plaintiff.

92. Supervising Defendants, directly and/or through their agents, knew or had reason to know of the particular unfitness, incompetence and/or dangerous attributes of Rice and

Martelli.

93. Supervising Defendants, directly and/or through their agents, should have reasonably foreseen that hiring and/or retaining Dauhajres and Hunter created a risk of harm to others, including Plaintiff.

94. Upon information and belief, during the hiring process and/or course of employment, Supervising Defendants, directly and/or through their agents, had actual knowledge

that Dauhajres had inappropriate or dangerous characteristics, attributes or tendencies that made her

an unacceptable candidate for her position.

85. Reasonable investigation would have disclosed Dauhajre undesirable characteristics, attributes or tendencies.

96. As a result of Supervising Defendants' conduct, Plaintiff was exposed to Hunter, who continuously harmed HTF, and Potter, who stood by Hunter and admittedly contributed to

Hunter's abusive behavior.

97. Supervising Defendants' negligent and/or palpably unreasonable conduct proximately caused Plaintiff's injuries and damages.

98. Plaintiff's injuries and damages are permanent and substantial.

99. As a result, Plaintiff is entitled to recover from Supervising Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements

and such other relief as the Court deems just and proper.

THIRD CAUSE OF ACTION

GROSS NEGLIGENCE

AGAINST ALL DEFENDANTS

100. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 101 as if fully set forth herein.

102. Defendants, directly and/or through their agents, owed a duty of care to Plaintiff.

103. Defendants, directly and/or through their agents, breached their duty of care to Plaintiff.

104. Defendants, directly and/or through their agents, failed to exercise slight care or diligence and/or acted in a palpably reasonable manner despite clear notice of outrageous and dangerous conduct causing harm to HTFand others.

105. Defendants' act and/or failure to act created an unreasonable risk of harm to Plaintiff.

106. The consequences of Defendants' conduct could and should reasonably have been

foreseen.

107. Defendants' grossly negligent conduct proximately caused Plaintiff's injuries and damages.

108. Plaintiff's injuries and damages are permanent and substantial.

109. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other

relief as the Court deems just and proper.

FOURTH CAUSE OF ACTION

BREACH OF FIDUCIARY DUTY

AGAINST ALL DEFENDANTS

110. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 111 as if fully set forth herein.

112. Plaintiff placed trust and confidence in Defendants directly and/or through their agents.

113. A fiduciary relationship existed between Plaintiff and Defendants.

114. Defendants held a dominant and superior position over Plaintiff.

115. Defendants, directly and/or through their agents, had a duty to act for and/or give advice for the benefit of Plaintiff.

116. Defendants, directly and/or through their agents, owed a duty of loyalty to Plaintiff.

117. Defendants, directly and/or through their agents, owed a duty to exercise reasonable skill and care with respect to Plaintiff.

118. Defendants, directly and/or through their agents, breached their fiduciary duties and/or acted in a palpably unreasonable manner, causing Plaintiff harm.

119. Plaintiff's injuries and damages are permanent and substantial.

120. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other

relief as the Court deems just and proper.

FIFTH CAUSE OF ACTION INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST Joan Dauhajres

121. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 122- above as if fully set forth herein.

123. Defendant Joan Dauhajres acted intentionally and/or recklessly.

124. Defendant Joan Dauhajres actions were extreme and outrageous.

125. Defendant Joan Dauhajres acted recklessly and in deliberate disregard of a high degree of

probability that her actions would cause Plaintiff emotional distress.

126. Defendant Joan Dauhajres actions were the proximate cause of Plaintiff's emotional

distress.

127. Plaintiff suffered and continues to suffer severe emotional distress as a result of Defendant Joan Dauhajres actions.

128. As a result, Plaintiff is entitled to recover from Defendant Rice compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other relief as the

Court deems just and proper.

SIXTH CAUSE OF ACTION

NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

AGAINST ALL DEFENDANTS

129. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 130 as if fully set forth herein.

131. Defendants, directly and/or through their agents, owed a duty of care to Plaintiff.

132. Defendants directly, and/or through their agents, breached their duty of care owed to Plaintiff.

133. Defendants' negligent and/or palpably unreasonable conduct proximately caused Plaintiff harm.

134. Plaintiff suffered and continues to suffer severe emotional distress.

135. Plaintiff's injuries and damages are permanent and substantial.

136. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements and such other

relief as the Court deems just and proper.

SEVENTH CAUSE OF ACTION

INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

AGAINST ALL DEFENDANTS

137. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 138 as if fully set forth herein.

139. Plaintiff had a reasonable expectation of economic advantage or benefit resulting from his continued development and exposure as a MSW licensed in New Jersey.

140. Defendants, directly and/or through their agents, had knowledge of such expectancy of economic advantage.

141. Defendants wrongly, without justification and in a palpably unreasonable manner, directly and/or through their agents, interfered with Plaintiff's expectancy of advantage or benefit.

142. In the absence of such interference, it is reasonably probable that Plaintiff would have realized his economic advantage or benefit.

143. Plaintiff sustained damages as a result of such interference.

144. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements, and such other

relief as the Court deems just and proper.

EIGHTH CAUSE OF ACTION

NEW JERSEY LAW AGAINST DISCRIMINATION

AGAINST ALL DEFENDANTS

145. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through

146 as if fully set forth herein.

147. The New Jersey Law Against Discrimination prohibits, inter alia, practices of discrimination because of AGE, PHYSICAL OR mental disability. N.J.S.A. § 10:5-1, et seq.

148. Plaintiff has been diagnosed with VARIOUS disabilities including mental.

149. Plaintiff is a member of a protected class.

150. Defendants, directly and/or through their agents, were aware of Plaintiff's disabilities and other special needs and agreed to make special accommodations.

151. Defendants, directly and/or through their agents, engaged in intentional discrimination against Plaintiff because of their protected class, and failed to accommodate HTF's

needs despite agreeing to do so.

152. Defendants, directly and/or through their agents, failed to make reasonable modifications in policies, practices, or procedures that would accommodate Plaintiff's various disabilities and related needs – modifications that were duly requested and agreed to be provided.

153. Defendants' conduct constitutes a violation of the New Jersey Law Against Discrimination.

154. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements, and such other

relief as the Court deems just and proper.

NINTH CAUSE OF ACTION

TITLE II OF THE AMERICANS WITH DISABILITIES ACT

AGAINST RUTGERS

155. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 156 as if fully set forth herein.

157. Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in

or be denied the benefits of the services, programs, or activities of a public entity, or be subjected

to discrimination by any such entity." 42 U.S.C. § 12132.

158. Plaintiff is a qualified individual with a disability.

159. Rutgers maintains the following policy but has failed honor it with regard to HTF:

The community of Rutgers University is committed to providing

equal educational access for individuals with disabilities in

accordance with Section 504 of the Rehabilitation Act of 1973,

Section 508 of the Rehabilitation Act of l998, and the Americans

with Disabilities Act Amendments (ADAA) of 2008. An

individual with a disability who is qualified for admission will

have the same access to programs, services and activities as all

other students. Rutgers University will make reasonable

modifications to its policies, practices, and procedures unless doing

so would fundamentally alter the nature of the service, program, or
activity, or pose an undue administrative or financial burden. The

university will provide services in a manner that promotes
independence and inclusion in all aspects of university life.
160. Through Defendant's actions, Plaintiff was excluded from participation in, and
denied benefits of, the Rutgers SSW-MSW program and a Rutgers education and was
otherwise
discriminated against because of htf disability.
161. Defendant, because of Plaintiff's disabilities, directly and/or through its agents,
denied Plaintiff reasonable modifications to accommodate Plaintiff's learning disability
and
related needs, and/or failed to engage in the evaluative process for reasonable modifi-
cations,
and/or denied Plaintiff the opportunity to participate in or benefit from Defendant's ser-
vices,
programs and activities, and/or subjected Plaintiff to discrimination, and/or violated its
own
policy with regard thereto.
162. Defendant acted with deliberate indifference to Plaintiff's disability and related
needs.
163. Rutgers, directly and/or through its agents, utilized criteria or methods of
administration that have the effect of subjecting Derrick, a qualified individual with a dis-
ability,
to discrimination on the basis of disability and/or that have the purpose or effect of de-
feating or
substantially impairing accomplishment of the objectives of its program with respect to
Derrick.
164. HTFwas discriminated against by Rutgers, directly and/or through its agents,
on the basis of his disability in the full and equal enjoyment of the goods, services, facili-
ties,
privileges, advantages or accommodations of a place of public accommodation.
165. Defendant's conduct constitutes a violation of Title II of the Americans with
Disabilities Act.


166. As a result, Plaintiff is entitled to recover from Defendant Rutgers compensatory
damages, attorneys' fees, costs, disbursements, and such other relief as the Court
deems just and
proper.
TENTH CAUSE OF ACTION
SECTION 504 OF THE REHABILITATION ACT OF 1973
AGAINST RUTGERS
167. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through
168 as if fully set forth herein.
169. Fed 504 of the Rehabilitation Act of 1973 provides that "no otherwise

qualified individual with a disability in the United States . . . shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to

discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. §

794.

170. Plaintiff is an individual who has been diagnosed with documented

disabilities and related needs. Rutgers provided HTF with limited and unsatisfactory Accommodations that did not address the needs. Rutgers MSW program refused to provide proper accommodation for class and provided nothing as required for the internship at UHNJ/ UMDNJ- Rutgers in violation of its own manual and program materials in addition to federal law.

171. Plaintiff is otherwise qualified to receive the benefit of the Rutgers basketball program and a Rutgers education.

172. Plaintiff was denied the benefit of the Rutgers basketball program by Defendant, directly and/or through its agents, solely by reason of his disability.

173. Rutgers University receives federal financial assistance.

174. Defendant, because of Plaintiff's disabilities, directly and/or through its agents, denied Plaintiff reasonable modifications to accommodate Plaintiff's disability, and/or failed to engage in the evaluative process for reasonable modifications, and/or denied Plaintiff

the opportunity to participate in or benefit from Defendant's services, programs and activities,

and subjected him to discrimination.

175. Defendant acted with deliberate indifference to Plaintiff's disability and related needs.

176. Defendant's conduct constitutes a violation of Section 504 of the Rehabilitation Act of 1973.

177. As a result, Plaintiff is entitled to recover from Defendant Rutgers compensatory damages, attorneys' fees, costs, disbursements, and such other relief as the Court deems just and

proper.

ELEVENTH CAUSE OF ACTION

42 U.S.C. § 1983

AGAINST ALL DEFENDANTS

178. Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 179 as if fully set forth herein.

180. 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any

citizen of the United States or other person within the jurisdiction thereof to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the

party injured in an action at law." 42 U.S.C. § 1983.

181. Plaintiff is a United States citizen.

182. Defendants, directly and/or through their agents, under color of law deprived Plaintiff of his constitutional rights, including his rights to substantive due process under the

Fourteenth Amendment of the United States Constitution.

183. Defendants, directly and/or through their agents, acted with reckless and/or deliberate indifference to Plaintiff's constitutional rights and engaged in conduct which shocks

the conscience.

184. Defendants, directly and/or through their agents, deprived Plaintiff of his right to be free from severe physical, verbal, emotional and psychological abuse.

185. Defendants, directly and/or through their agents, engaged in conscience shocking conduct which increased the risk of danger to Plaintiff by causing Plaintiff to be continuously

subjected to Rice's abusive conduct.

186. Defendants' conduct constitutes a violation of 42 U.S.C. § 1983.

187. As a result, Plaintiff is entitled to recover from Defendants, jointly and severally, compensatory damages, punitive damages, attorneys' fees, costs, disbursements, and such other

relief as the Court deems just and proper.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally as identified under each separate count of the Complaint, for compensatory damages, punitive

damages (where applicable), interest, attorneys' fees, disbursements, costs and all further relief

to which Plaintiff is entitled and which the Court deems just and proper.

DEMAND FOR TRIAL BY JURY

Please take notice that Plaintiff, HTF, demands a trial by Jury.


Dated: New Jersey 10/1/2019

Respectfully submitted,

/S/___HF  ProSe for Plaintiff HTF

1520 Morris Ave Hillside NJ 07205

312-488-9436


CERTIFICATION

The undersigned hereby certifies that there are no other civil actions or arbitrations pending in any Court or jurisdiction arising out of the facts and circumstances herein to the best

of my knowledge, information, and belief.

Dated:10/1/2019

/S/____HF_____

HF

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

(Title of Action)

                               :

H.F.          Plaintiff,    :         Civil Action No.

          v.           :         NOTICE OF MOTION

*Rutgers University*
         Defendant. :
*State of NJ MSW*
*Rutgers SSSW program* :       HF

PLEASE TAKE NOTICE _____

(Name of Moving Party)

will move before the Honorable _____, U.S.D.J. on

_____

(Motion days are the 1st and 3rd Monday of each month)

for an Order _____.

(describe type of relief being sought)

In support of my motion, I will rely on the attached brief (if necessary).

                    HF
                    Name
                    1520 Morris Place
                    Hillside NJ 07205
                    312 488 9936
                    Address

Date: 10/1/19

CERTIFICATION OF SERVICE

I, _____HF_____, certify that a copy of my motion was served
       (Name of Moving Party)

by _____ on _____ upon:
  (Mail, Personal Service, etc.)       (Date)

*Rutgers University*
(Name of Opposing Party)

*360 Dr MLK Blvd d Legal Depart*
*Newark nj 07102*

_____
(Address of Opposing Party)

_____
Name (Signature)